UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEITH LAVERPOOL,

    Plaintiff,

    v.

DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT,

    Defendant.

Civil Action No. 18-284 (JEB)

**MEMORANDUM OPINION**

Plaintiff Keith Laverpool brought this *pro se* action under the Freedom of Information Act requesting documents related to the foreclosure of his Georgia residence. In now seeking summary judgment, the Government contends that it has conducted an adequate search and released all retrieved documents in full. The Court concurs.

**I.    Background**

The underlying factual background here is undisputed. Laverpool submitted essentially identical FOIA requests on July 13, 2015, and May 23, 2017, to the Department of Housing and Urban Development. See Compl., Exhs. A, B. Both sought five categories of material: (1) anything related to a specific Federal Housing Administration file number concerning a property at 1580 Smithson Court, Lithonia, Georgia; (2) proof that Plaintiff canceled his FHA insurance; (3) proof that the lender did so; (4) any request for a foreclosure sale of the property; and (5) loan documents relating to the property. Id. A search uncovered 144 pages, all of which were ultimately released in full. See ECF No. 6-1 (Declaration of Michael German), ¶¶ 5-6.

Laverpool nonetheless initiated the instant suit on February 12, 2018, and HUD now moves for summary judgment.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof. See DOJ v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey,

2

656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III.    Analysis**

In seeking summary judgment here, the Government maintains that its search efforts sufficiently comply with FOIA. "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. DOJ, 23 F.3d 548, 551 (D.C. Cir. 1994). The adequacy of an agency's search for documents under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984). "When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." SafeCard, 926 F.2d at 1201. To meet its burden, the agency may thus submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). To satisfy the dictates of FOIA, a defendant must, at a minimum, "aver that it has searched all files likely to contain relevant documents." Am. Immigration Council v. Dep't of Homeland Sec., 21 F. Supp. 3d 60, 71 (D.D.C. 2014) (quoting Am. Immigration Council v. Dep't of Homeland Sec., 950 F. Supp. 2d 221, 230 (D.D.C. 2013) (emphasis added)).

3

If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

To support its position regarding the adequacy of the search here, Defendant attaches the Declaration of Michael German, the Director of HUD's Georgia State Office. German avers that "[a] search was conducted by HUD Single Family staff of all HUD databases that would have information responsive to Mr. Laverpool's FOIA request." German Decl., ¶ 5. HUD released 133 pages in full to Plaintiff and explained that those documents were responsive to his first and fifth categories of records sought, but that HUD had none responsive to his remaining categories. Id. After initially withholding 11 additional pages responsive to his first category under FOIA exemptions 4 and 5, HUD ultimately released them all in full several months later. Id., ¶ 6 (mistakenly labeling exemptions as 5 & 6); id., Exh. C (Oct. 2, 2017, Letter from HUD to Plaintiff citing exemptions 4 & 5). On its face, then, the Court has little reason to question the thoroughness of HUD's performance here.

Laverpool nonetheless raises several distinct challenges. He first inexplicably targets HUD's reliance on FOIA exemptions to withhold the 11 pages. See Opp. at 2-3. Yet, as just explained, while Defendant relied on the exemptions in its first response to Plaintiff, it ultimately abandoned that tack and released them in full. This issue is thus moot.

Laverpool next points out that German "may lack personal knowledge," Opp. at 4, apparently as to the search. Yet, "FOIA affidavits can be based on hearsay, and there is no requirement that the declarant must have been personally involved in each of the challenged searches." Wisdom v. U.S. Trustee Program, 266 F. Supp. 3d 93, 102 (D.D.C. 2017); see Barnard v. Dep't of Homeland Security, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) ("Declarants are not required to participate in the search for records."). German has been involved in HUD's

responses from the beginning and is the author of the letters to Laverpool describing the searches and documents recovered, so he self-evidently has "familiarity with the documents in question." Wisdom, 266 F. Supp. 3d at 102 (internal quotation marks omitted); see German Decl., Exhs. C, D. He thus has sufficient knowledge to act as the declarant here.

The central point Laverpool appears to be urging here − and the motivator for his FOIA requests in the first place − is that he himself never canceled his FHA insurance. He seems to wish to obtain a written document showing who canceled it and how, which, the Court assumes, he believes may be helpful in demonstrating that there may have been an error in his foreclosure proceedings. See Opp. at 4. German, however, took the extra step – not required by FOIA, which mandates only the release of documents, not the answers to requesters' questions – of elucidating this issue:

> In a seven-page document entitled FHA Case Details that was released to you, there is information regarding cancellation of the FHA mortgage insurance in 2013. Specifically, on pages 3 and 4 of that document, there is information that Roundpoint Mortgage Servicing Corporation, which was the servicer/holder of your mortgage in 2013, effected cancellation of the FHA mortgage insurance, effective April 29, 2013. The information input by Roundpoint Mortgage indicates it was a voluntary termination of the insurance by the lender and borrower.

German Decl., Exh. D. To the extent that "information" does not include signed paperwork, the Government explains that this is because in 2013 "there was no HUD policy requiring that the cancellation be in writing." Reply at 1.

While it is understandable that Plaintiff may be dissatisfied that he cannot locate the document he seeks, the Government has sufficiently articulated why it likely does not exist. Agencies, in any event, are judged not on the specific documents that they produce but on whether the search was "reasonably calculated to uncover all relevant documents." Weisberg v

5

DOJ, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate."  Perry, 684 F.2d at 128.  It is so here.

## IV. Conclusion

For the reasons stated above, the Court will issue a contemporaneous Order granting summary judgment to Defendant.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 8, 2018